IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

SHARON E. ADKINS,

        Plaintiff,

vs.                                  CASE NO. 1:11-cv-09-MP-GRJ

MICHAEL J. ASTRUE,
Commissioner of Social Security

        Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's applications for a period of disability and disability insurance benefits and supplemental income benefits pursuant to Title II and XVI of the Social Security Act. (Doc. 1.) The Commissioner has answered (Doc. 9), and both parties have filed briefs outlining their respective positions. (Docs. 16 & 17.) For the reasons discussed below, it is recommended that the Commissioner's decision be **AFFIRMED**.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed concurrent applications for a period of disability, disability insurance benefits, and supplemental security income under Title II and Title XVI on March 10, 2005, alleging a disability onset date of March 9, 2005 due to mental problems and pain in her heel. (R. 57-61, 269-71.) These applications were denied initially and upon reconsideration. (R. 33, 271-74.) Following a hearing, an

administrative law judge (ALJ) issued a decision unfavorable to Plaintiff on January 31,

2007.  (R. 16-26.)  The Appeals Council denied Plaintiff's request for review on August

10, 2007.  (R. 5-7.)  Plaintiff sought review in this Court, and on March 17, 2009, the

Court issued an Order affirming the Commissioner's decision.  *Adkins v. Astrue,* Doc.

20, Case No. 1:07-cv-209-MP-AK (N.D. Fla., March 17, 2009) (vacated).  Plaintiff

sought review in the U.S. Court of Appeals for the Eleventh Circuit, and at Defendant's

request, the case was remanded to this Court with instructions to vacate its Order and

further remand the case to the Appeals Council for further proceedings.  (R. 538-42.)

On remand, the ALJ conducted a second hearing on July 13, 2010.  The ALJ

had been directed by the Appeals Council to consider the Plaintiff's mental impairment

plus her asthmatic limitations as well as to receive evidence from a vocational expert.

Following the hearing, the ALJ rendered a decision on September 20, 2010, finding that

Plaintiff was not eligible for disability or SSI benefits.  (R.300-10.)  On January 18,

2011, Plaintiff filed the instant appeal to this Court.  (Doc. 1.)

## II. <u>FINDINGS OF THE ALJ</u>

The ALJ determined that Plaintiff met the insured status requirements of the

Social Security Act through March 31, 2010.  He further determined that Plaintiff had

not engaged in substantial gainful activity since March 9, 2005. (R. 302.)  The ALJ

found that Plaintiff had the following severe impairments: insulin dependent diabetes

mellitus, affective disorder, obesity, asthma, and kidney disease.  The ALJ went on to

find at step three of the sequential evaluation that Plaintiff did not have an impairment

or combination of impairments that met or medically equaled one of the listed

impairments.  (R. 303-04.)

With respect to Plaintiff's residual functional capacity at step four of the sequential evaluation, the ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § § 404.1567(b) and 416.967(b) with the following specifications: she should avoid moderate exposure to fumes, odors, and dust; she can only perform simple, routine, repetitive tasks; and she can only occasionally interact with the public.  (R. 304-05.)  The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to produce some of Plaintiff's alleged symptoms but that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not credible to the extent they conflicted with the ALJ's RFC assessment.  (R. 308.)  The ALJ noted that Plaintiff's statements were inconsistent with her own prior statements and with the medical evidence in the record.  (R. 308.)  The ALJ concluded at step four that Plaintiff was capable of performing her past relevant work as a cleaner/housekeeper.[1]  A vocational expert testified that an individual of the same age, education, and residual functional capacity as Plaintiff could perform her past relevant work.  The VE testified that such an individual would be able to work as a cleaner/housekeeper  (R. 309.)  The ALJ thus concluded that Plaintiff had not been under a disability at any time from March

---

[1] On page 10 of the ALJ's written decision the ALJ wrote "the claimant is unable to perform the claimant's past relevant work." R. 309. The Court assumes this was a typographical error because in the next sentence the ALJ stated he concurred with the VE – who had concluded the claimant could perform her past work as a cleaner/housekeeper. Further, in the last sentence the ALJ wrote "the undersigned finds that the claimant is able to perform it [past relevant work] as actually performed." Lastly, in the heading for section 6. of the written decision the ALJ stated  "[T]he claimant is capable of performing past relevant work as a cleaner/housekeeper," thus leaving little doubt that the ALJ concluded Plaintiff could perform her past relevant work.

9, 2005, through the date of his decision.

### III.  ISSUES PRESENTED

Plaintiff argues that the ALJ did not properly assess her RFC, did not consider her severe impairments in combination, and failed to include all of Plaintiff's limitations in the hypotheticals to the VE.  (Doc. 1.)  Stated another way, the issues are whether the ALJ's evaluation of Plaintiff's subjective complaints comports with the Eleventh Circuit pain standard; whether the ALJ's assessment of her RFC is supported by substantial evidence; and whether the ALJ's determination that Plaintiff can perform her past relevant work is supported by substantial evidence.

### IV.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[2] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[3]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against

---

[2] *See* 42 U.S.C. § 405(g) (2000).

[3] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

the Commissioner's decision.[4] The district court must view the evidence as a whole,

taking into account evidence favorable as well as unfavorable to the decision.[5]

However, the district court will reverse the Commissioner's decision on plenary review if

the decision applies incorrect law, or if the decision fails to provide the district court with

sufficient reasoning to determine that the Commissioner properly applied the law.[6]

    The law defines disability as the inability to do any substantial gainful activity by

reason of any medically determinable physical or mental impairment that can be

expected to result in death, or has lasted or can be expected to last for a continuous

period of not less than twelve months.[7]  The impairment must be severe, making

Plaintiff unable to do his previous work, or any other substantial gainful activity which

exists in the national economy.[8]

    The ALJ must follow five steps in evaluating a claim of disability.[9]  First, if a

claimant is working at a substantial gainful activity, he is not disabled.[10]  Second, if a

---

[4] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[5] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[6] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[7] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 2005 version unless otherwise specified.).

[8] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[9] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[10] 20 C.F.R. § 404.1520(b).

claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.[11]  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.[12]  Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.[13]  Fifth, if a claimant's impairments (considering his residual functional capacity ("RFC"), age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.[14]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[15]  The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[16]  The Commissioner may satisfy this burden by pointing to the Medical-Vocational Guidelines (the "Grids") for a conclusive

---

[11] 20 C.F.R. § 404.1520(c).

[12] 20 C.F.R. § 404.1520(d).

[13] 20 C.F.R. § 404.1520(e).

[14] 20 C.F.R. § 404.1520(f).

[15] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); *see also* Doughty v. Apfel, 245 F. 3d 1274, 1278 (11th Cir. 2001).

[16] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:

> In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform.  In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

determination that a claimant is disabled or not disabled.[17]

However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion."[18]   In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[19]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[20]   Such independent evidence may be introduced by a Vocational Expert's ("VE") testimony, but this is not the exclusive means of introducing such evidence.[21]   Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.

---

[17] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

[18] Wolfe v. Chater, 86 F.3d 1072, 1077 ( 11th Cir. 1996). See Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[19] Walker, 826 F.2d at 1003.

[20] Wolfe, 86 F.3d at 1077-78.

[21] See id.

## V.  SUMMARY OF THE RECORD

### A.    Medical History

Plaintiff saw Dr. Christina Medina at the Shands at UF Clinic on March 1, 2005.
She complained of pain in her left heel for the past few months.  Plaintiff stated that she
wore an ankle band that seemed to help but had not tried any pain medication.  Plaintiff
admitted that she had been somewhat non-compliant with her diabetes treatment; her
glucometer broke and she had not been checking her sugars on a daily basis.  Dr.
Medina observed that Plaintiff was "a pleasant female" with some tenderness upon
palpation on the bottom of her heel.  An x-ray revealed a possible bone spur.  Dr.
Medina recommended Ibuprofen.  (R. 157-58.)

Psychologist Andres Nazario, Jr., Ph.D., evaluated Plaintiff on May 13, 2005.
Plaintiff presented casually dressed and well-groomed.  She walked without difficulty
and was cooperative throughout the interview.  Plaintiff complained that she applied for
disability benefits due to bipolar disorder, depression, asthma, and pain on the bottom
of her foot when she walks.  She told Dr. Nazario that she was Baker Acted the
previous year after cutting her arm with a piece of glass.  Plaintiff stated that she did not
like to socialize or do much, and that she was fired in February 2005 because she
couldn't get along with others.  Her activities included grocery shopping 2-3 times per
week, cooking, cleaning, laundry, watching TV, and playing computer games.  Plaintiff
said she sometimes visits a friend.  During the interview, Plaintiff was alert and
cooperative with a somewhat depressed mood.  Dr. Nazario diagnosed Plaintiff with
anxiety disorder and bipolar disorder.  Dr. Nazario opined that Plaintiff would be able to

concentrate, understand, and follow directions but might experience difficulty interacting appropriately with others.  (R. 213-215.)

State agency psychiatrist Alejandro F. Vergara, M.D., completed a psychiatric review technique form and a mental RFC assessment form on May 19, 2005.  Dr. Vergara opined that Plaintiff had moderate limitations in carrying out detailed instructions, maintaining concentration, completing a normal workday without interruptions from psychological symptoms, and goal setting.  He also noted that "taking into consideration all information in the file, including current ADL, she appears to be capable of doing simple, repetitive type tasks and assignments.  (R. 217-234.)

Endocrinologist and internal medicine specialist Eric C. Puestow, M.D., completed a physical RFC assessment on June 13, 2005.  Dr. Puestow opined that Plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently; sit, stand, and/or walk for about 6 hours in an 8-hour workday; and should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation.  (R. 235-242.)

State agency psychologist Michael A. Zelenka, Ph.D. completed a psychiatric review technique and mental RFC assessment form on August 17, 2005.  Dr. Zelenka determined that Plaintiff had mild restrictions on activities of daily living and moderate difficulties in maintaining social functioning and maintaining concentration, persistence, or pace.  Dr. Zelenka's assessment of Plaintiff's mental RFC was that she had moderate limitations in the following areas: understanding and remembering detailed instructions; carrying out detailed instructions; maintaining attention and concentration for extended periods; working in coordination with or proximity to others without being

distracted by them; completing a normal workday without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; interacting appropriately with the general public; and setting realistic goals or making plan independently of others.  (R. 243-260.)

On August 23, 2005, state agency physician Terry T. Rees, M.D., a board certified general and thoracic surgeon, completed a physical RFC assessment.  Dr. Rees opined that Plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently; sit, stand, and/or walk for about 6 hours in an 8-hour workday; and should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation.  (R. 261-268.)

Plaintiff had received mental health treatment at Meridian Behavioral Healthcare since 2004.  Plaintiff frequently treated with Paula Stowell, ARNP, at Meridian.  Ms. Stowell consistently noted that Plaintiff was making good progress and was doing well; Plaintiff generally reported that her symptoms were managed with medication but often reported difficulty sleeping.  (R. 171-212, 393-411, 597-666.)  In February 2006, Plaintiff reported some auditory hallucinations and her progress was rated as fair.  In December 2006, Plaintiff reported that she sometimes heard voices.  (R. 606.)  Edgar A. Walker, M.D., saw Plaintiff several times in 2008 and 2009, and noted that her progress was "good," often 10 out of a 10-point scale.  On October 2, 2009, Plaintiff reported management of her symptoms with medication, occasional difficulty sleeping, and that she enjoyed volunteering.  (R. 337-385.)

Records from the Alachua County Health Department from 2005 to 2009 indicate that Plaintiff's diabetes was often uncontrolled and she often did not comply with her recommended medication regimen June and September 2006 Plaintiff had not refilled her prescriptions in several months.  Health Department records also indicate that Plaintiff's hypertension was often uncontrolled, and she was encouraged to make lifestyle changes to help control her conditions.  (R. 411-527, 667-736.)

Plaintiff was evaluated by nephrologist Sathish K. George, M.D. on June 30, 2009 for her chronic kidney disease.  Plaintiff reported a chronic rash on her arms and thighs for 20 years.  Dr. George diagnosed Plaintiff with Stage III chronic kidney disease secondary to age-associated loss of GFR, diabetes mellitus, and hypertension. Dr. George noted that due her petechial rash, he could not rule out other causes, such as a prior globulinemia-mediated renal disease.  He ordered additional tests and suggested medications.  A subsequent renal ultrasound on July 13, 2009 revealed a dromedary hump on Plaintiff's left kidney, although he couldn't rule out a left renal mass.  Treatment notes from September 10, 2009 indicated Plaintiff was "doing well" and would continue with her medication regimen.  A March 11, 2010 follow up note indicated that Plaintiff continued to do well and would continue controlling her condition with medication.  (R. 386-392.)

Dr. Linda Abeles, Ph.D., performed a consultative examination of Plaintiff on January 30, 2008.  Plaintiff reported that she suffered from bipolar disorder, asthma, diabetes, and hypertension.  She reporting that she was fired from her job at a donut shop because of "attitude problems."  Plaintiff described her activities of daily living as

including going to the library.  Plaintiff reported some feelings of depression with sleep

disturbances; she reported a previous history of auditory hallucinations.  Dr. Abeles

diagnosed Plaintiff with bipolar disorder and personality disorder traits and assessed a

GAF of 65.  Dr. Abeles opined that Plaintiff's "current level of psychological functioning

would not necessarily preclude her from obtaining employment" but that her personality

disorder traits could make maintaining employment difficult.  Dr. Abeles noted that

Plaintiff's prognosis for future success in the workplace, given her time out of work,

would be fair at best.  (R. 737-739.)

On February 26, 2008, state agency physician Angeles Alvarez-Mullin, M.D.,

completed a psychiatric review technique.  Dr. Alvarez-Mullin opined that Plaintiff had

mild difficulties in activities of daily living, maintaining social functioning, and

maintaining concentration, persistence, or pace.  (R. 74-753)

### B.    Hearing Testimony

Plaintiff was 55 years old at the time of the July 13, 2010 hearing.  She testified

that she lived by herself in an apartment and was a high school graduate.  Plaintiff is

right-handed and has never had a driver's license.  (R. 758.)  She traveled to the

hearing with her parents.  Plaintiff testified that from 1990 to 2005, she worked as a

cashier in two different places–a grocery store and a doughnut shop.  The tasks were

about the same in each job, and she was standing on her feet most of the time.  (R.

759.)  She testified that she had to lift about 10 pounds at her cashier jobs.  Plaintiff

was also a custodian at the University of Florida, where she cleaned offices, bathrooms,

hallways, and classrooms.  She was on her feet all day with that job and also had to lift

about 10 pounds.

Plaintiff testified that she has not done any work since March 9, 2005.  (R. 760.)
She testified that she has not really looked for work and that her parents help and she
receives food stamps.  Plaintiff was fired from her cashier job at the doughnut shop
because she was being rude to a customer.  She testified that had been rude before,
but at Meridian they put her on medication that seemed to help.  (R. 761.)  Plaintiff
testified that in 2004 she was Baker Acted because she was trying to hurt herself by
cutting her arms and legs.  When she was working in 2005, she could not get along with
anybody at work although she didn't experience the same problems at home.  She
testified that she had difficulty getting along with some of her supervisors and co-
workers as well–they did not want to have anything to do with her because she was
talking to them loudly.  (R. 762.)

Plaintiff testified that she continued to get treatment at Meridian because she
"needed the medication to get by."  She testified she was afraid to get a job because of
how she was acting and now she is having problems with her legs.  If she stands too
long, they start hurting, but the pain stops when she sits down.  Plaintiff told the ALJ
that "too long" means about an hour.  Her problems with her legs started about four
years prior to the hearing.  She didn't recall the doctor telling her anything regarding her
legs and he did not prescribe her any medications.  (R. 763.)  Plaintiff testified that she
was not sure if it was a muscle ache but the pain did not move and stayed in the top of
legs in her hip and thigh area.  The pain in her thigh and hip area bothered her mostly
when she was walking, as did her lower back.  (R. 764.)  She testified that she can walk

a few blocks before her legs start bothering her.  She does not receive treatment for her legs or back and has not received any treatment for pain.  The health department provides treatment for her diabetes, high blood pressure, asthma, kidneys, and liver. (R. 765.)

Plaintiff testified that since March 2005, her energy level as not been as good as it was before.  She is only able to be productive for a few hours before her legs bother her, at which time she finds a place to sit down or goes home.  She only takes over-the-counter medicine for her legs.  (R. 766.)  Plaintiff testified that her biggest problem in being able to work is getting along with people.  Her medications help as long as she's at home and not working, and she thought that even with the medications she would have problems working.  (R. 768.)  She stated that she was often intimidated by others at work.  She lives by herself in an apartment and does not like visiting other people's apartments.  She sees her parents a couple of times a year.  (R. 769.)

Plaintiff testified that she has a cart that she pushes to a grocery store about four blocks away and she does not have any difficulty doing that or actually shopping.  She prefers to shop early in the morning before it gets too hot.  (R. 770.)  She gets along "pretty good" with the employees at the store.  At home, she does her own cleaning and laundry and her personal needs such as bathing and dressing.  Plaintiff testified that her hobbies include watching TV and playing computer games.  Mahjong is her favorite, and she spends 3-4 hours per day playing it on the computer.  Sometimes she will sit and play for a couple of hours, get up, and then sit down again.  (R. 771.)  When she watches TV, she might watch for four hours at a time.

Plaintiff testified that she goes to Meridian every three months for her bipolar condition.  She thinks it is just staying the same, but doctors have told her it is getting a little better.  For her diabetes, Plaintiff takes insulin and has since 2006.  (R. 772.)  She testified that she has been compliant with taking her diabetes medication.  Plaintiff also stated that she gotten better about controlling her diet and cooking for herself.  She said that other than grocery shopping, she leaves her apartment to go to doctor appointments and sometimes to a restaurant.  She rides the city bus and has no problems with that.  (R. 773.)  Plaintiff testified that she goes to Meridian every three months and to the health department every 2-3 months.  (R. 774.)

A vocational expert (VE), V. David Pigue, also testified at the hearing.  Mr. Pigue testified that Plaintiff's primary work experience was as a cashier/checker and as a cleaner/housekeeping.  (R. 776.)  The cleaner position was light work with an SVP of 2 and is unskilled unemployment.  Mr. Pigue testified that based on Plaintiff's work history, unskilled employment is appropriate.  The ALJ posed a hypothetical to the VE assuming a 55-year-old individual with a disability onset at 49 years of age, with same education and past relevant work as Plaintiff.  The ALJ asked the VE to further assume that the individual had a RFC for light work with limitations of avoiding moderate exposure to fumes, odors, and dust; and only performing simple, routine, repetitive tasks.  (R. 776.)  Based on the hypothetical, the VE testified that the individual would be able to perform past relevant work as a cashier/checker or cleaner/housekeeping.  The VE noted that the fumes and odors associated with mild housecleaning agents would not be limiting, especially with the move to more "green" products.  The VE also testified

that there were no conflicts between his testimony and the Dictionary of Occupational Titles or its companion publication.  The ALJ then asked the VE what the outcome would be if he added to the hypothetical that the individual could only have occasional interaction with the public.  (R. 777.)  The VE testified that the additional restriction would rule out cashiering.

Plaintiff's representative asked the VE to consider the hypothetical if the person had a marked or severe ability to interact with the public, co-workers, or supervisors, and who had a GAF of 50 due to depression and anxiety at a severe level.  The VE testified that it would be a serious issue from a non-exertional standpoint but that the housekeeping job does not require interacting with people.  (R. 778.)   The VE testified that the DOT distinguishes between residential and commercial housekeeping, but the closest to Plaintiff's past work would be cleaner, housekeeping.  (R. 779-780.)  Plaintiff's representative asked the VE to consider the hypothetical where the marked impairment interrupted the normal workday.  The VE testified that the main problem with severe limitation in that regard would be with attendance issues.  (R. 780-781.)

## VI.  DISCUSSION

Plaintiff argues that the ALJ's evaluation of Plaintiff's subjective complaints did not comport with the Eleventh Circuit pain standard and that the ALJ's assessment of Plaintiff's RFC and determination that Plaintiff can perform her past relevant work are not supported by substantial evidence.

## A.  The ALJ properly assessed Plaintiff's credibility

As part of his credibility finding, the ALJ concluded that Plaintiff's impairments

could reasonably be expected to produce some of the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the ALJ's determination of Plaintiff's residual functional capacity assessment.

In Hand v. Heckler, 761 F.2d 1545, 1549 (11th Cir. 1986), the Eleventh Circuit adopted the following pain standard:

> There must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

If the Commissioner rejects a claimant's allegations of pain, he must articulate explicit and adequate reasons, and these reasons must be based on substantial evidence. Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987).  A clearly articulated credibility finding with substantial supporting evidence in the record should not be disturbed by a reviewing court.  Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995); MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986).

The ALJ reviewed the evidence in the record and determined that it did not fully support Plaintiff's subjective complaints.  The ALJ noted that Plaintiff's subjective complaints were inconsistent with her own prior statements as well as the record as a whole.  As the ALJ pointed out, though Plaintiff testified that she could not work, she also testified that she played a computer game for several hours a day.  Plaintiff also testified that even when taking her medication—which the Plaintiff consistently reported to mental health providers was effective in managing her bipolar disorder–she had

problems dealing with people.  However, Plaintiff also testified that she worked as a cashier while taking no medication. (R. 308.)

The ALJ's determination that Plaintiff's subjective complaints were not credible is further supported by Plaintiff's testimony regarding her activities of daily living.  Plaintiff testified that she enjoyed visiting with friends and shopping, activities not consistent with a severe inability to get along with others.  In addition, although she testified that she had daily, severe pain and could only walk a few blocks without pain, Plaintiff testified that she walked to a grocery store four blocks away to go shopping and did not require assistance shopping.  A plaintiff's daily activities may be considered in assessing pain.  Harwell v. Heckler, 735 F.2d 1292, 1293 (11th Cir. 1984).  Despite Plaintiff's portrayal of her pain as daily and severe, there is no evidence in the record that she received treatment for pain and only occasionally took over the counter medication for pain.  See id.

Another inconsistency between Plaintiff's testimony and the record is her representation that she had been compliant with taking her medication; yet medical records show persistent problems of noncompliance with taking medications and following advice regarding lifestyle changes, resulting in uncontrolled diabetes and hypertension.

Finally, to the extent Plaintiff contends that her primary barrier to finding employment is her inability to get along with others, there is no indication that Plaintiff had any issues with the numerous healthcare providers she interacted with over the years.  The medical evidence indicates that Plaintiff behaved appropriately and was

often described as "pleasant" and "cooperative" by her providers.

The Court concludes that the ALJ's rejection of Plaintiff's subjective complaints of pain was supported by substantial evidence and that the ALJ articulated specific reasons for his credibility finding.

## B.  The ALJ's RFC is supported by substantial evidence

The ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § § 404.1567(b) and 416.967(b)  (lifting no more than 20 pounds at a time and 10 pounds frequently) with the following specifications: she should avoid moderate exposure to fumes, odors, and dust; she can only perform simple, routine, repetitive tasks; and she can only occasionally interact with the public.  (R. 304-05.)

The ALJ assigned great weight to the opinions of Dr. Vergara and Dr. Zelenka. Dr. Vergara, a state agency reviewing psychiatrist, opined that  Plaintiff had moderate limitations in carrying out detailed instructions, maintaining concentration, completing a normal workday without interruptions from psychological symptoms, and goal setting. He also noted that "taking into consideration all information in the file, including current ADL, she appears to be capable of doing simple, repetitive type tasks and assignments. (R. 217-234.)  Dr. Zelenka, a state agency psychologist, opined that Plaintiff had moderate limitations in the following areas: understanding and remembering detailed instructions; carrying out detailed instructions; maintaining attention and concentration for extended periods; working in coordination with or proximity to others without being distracted by them; completing a normal workday without interruptions from psychologically based symptoms and performing at a consistent pace without an

unreasonable number and length of rest periods; interacting appropriately with the general public; and setting realistic goals or making plan independently of others.  (R. 243-260.)

The ALJ also assigned great weight to two of Plaintiff's providers at Meridian–psychiatrist Dr. Walker and nurse practitioner Stowell.  Both opined that Plaintiff was making good progress, was compliant in taking her medications, and that her symptoms were managed by medication with no reported side effects.  Dr. Nazario's clinical evaluation of Plaintiff–wherein he opined that she appeared to be able to concentrate and understand and follow directions–was assigned some weight by the ALJ.  The ALJ assigned partial weight to the opinion of Dr. Abeles, noting that her opinion that Plaintiff's personality disorder traits might cause difficulties in maintaining employment was not consistent with the medical evidence of record.

The Court notes that state agency physician Dr. Alvarez-Mullin opined that Plaintiff had mild difficulties in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace.  (R. 74-753.)

With regard to Plaintiff's exertional limitations, the ALJ noted that although two state agency physicians–Dr. Puestow and Dr. Rees–had opined that Plaintiff could work at the medium exertional level, their opinions were given little weight because the record showed that Plaintiff's exertional abilities were more restricted.

The ALJ adequately considered the combined effects of Plaintiff's mental and physical impairments in determining her RFC.  The Court concludes that the ALJ's assessment of Plaintiff's residual functional capacity is supported by substantial

evidence.

## C.  The ALJ's finding that Plaintiff could perform past relevant work is supported by substantial evidence

After determining Plaintiff's RFC in light of her limitations, medical evidence, and her credibility, the ALJ included these limitations in a hypothetical question to a VE. The VE confirmed that Plaintiff could perform her past relevant work as a housekeeper or cleaner.  The ALJ specifically addressed Plaintiff's social limitations and limits on exposure to fumes, odors, and dust.  The VE testified that Plaintiff's limitations did not preclude her from performing past relevant work.  For the reasons discussed above, the ALJ's RFC as included in the hypothetical is supported by substantial evidence. Accordingly, the ALJ did not err in finding that Plaintiff was not disabled because his determination at step four that Plaintiff could perform past relevant work is supported by substantial evidence.

## VII.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of the Commissioner should be **AFFIRMED**.

**IN CHAMBERS** in Gainesville, Florida, on the 9th day of January 2012.

*s/ Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**